# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVIND VYAS GOPAL,<br><br>　　　　　　　　　　Petitioner,<br>　vs.<br><br>D.K. SISTO, Warden,<br><br>　　　　　　　　　　Respondent. | CASE NO. 1:07CV1442-IEG(AJB)<br><br>Order Denying Petition for<br>Writ of Habeas Corpus |

Petitioner Arvind Vyas Gopal, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his June 1, 2004 conviction in the Stanislaus County Superior Court on one count of attempted first degree murder and related charges. Respondent has filed an answer, lodging relevant portions of the state court record, and Petitioner has filed a traverse.

Upon review of all of these materials, for the reasons explained herein, the Court DENIES the petition.

### *Factual Background*

The following recitation of the underlying facts is taken verbatim from the October 27, 2005 unpublished opinion of the California Court of Appeal. [Respondent's Notice of Lodgment ("NOL"), Lodgment No.1.]

> On June 10, 2003, Sailesh Narayan and appellant had an argument on the telephone. One half hour later, about 9:00 a.m., Sailesh arrived at the warehouse where appellant worked as an auto detailer and a fight ensued between the two.

Sailesh suffered a knife cut to his face during the fight. The injury permanently damaged his facial muscle above his left eyebrow and resulted in a five-inch scar.

Sailesh testified that, when he arrived at the warehouse, he approached appellant and asked him why he had sworn at him on the telephone. Appellant pushed Sailesh and he pushed back. As Sailesh turned his back, appellant slashed him twice across his face with a knife. Sailesh pushed and kicked appellant to get away, but appellant ran after him with a knife, repeating numerous times, "I'm gonna kill you, mother fucker. I'm gonna kill you." Appellant eventually stopped and left the warehouse.

Kumesh Narayan witnessed Sailesh and appellant push each other before appellant slashed Sailesh with a knife. Kumesh testified that Sailesh kicked appellant and ran outside. Appellant picked up a pipe and chased Sailesh, yelling, "I'm gonna kill you."

Sheriff's Deputy Adam Basmajian testified that he arrived at the warehouse about 9:40 p.m., and took statements from Kumesh, Ronil Sharma, Amar Singh, and Rakesh Roshan. Deputy Basmajian contacted Sailesh at the hospital about 11:15 p.m. and spoke to him briefly. He did not think Sailesh smelled of alcohol or showed signs of being under the influence. Deputy Basmajian found Sailesh to be "very alert" during the interview.

On cross-examination, Deputy Basmajian acknowledged that during his interview Kumesh did not mention a pipe or having heard appellant say "I'm gonna kill you" on the night in question. Ronil Sharma told Deputy Basmajian he was walking to the liquor store when the incident occurred and did not see anything. Deputy Basmajian estimated that his interviews with Kushmesh and Sharma were each approximately five minutes in length. He described all of the witnesses he spoke to as being evasive in their responses to his questions.

**Defense**

Rachel Hernandez, appellant's girlfriend, was present at the scene during the incident. Hernandez testified that she and appellant had been cutting rags with a knife, to wax a car, when Sailesh arrived. Hernandez testified that Sailesh was upset and confronted appellant. Sailesh pushed Hernandez's arm out of the way, grabbed appellant's neck and tried to choke him. Sailesh let go of appellant's neck and then punched and kicked him.

Hernandez testified that appellant tried to break away from Sailesh and, when he did, "the knife went up and slashed his – I guess his face." Hernandez denied that appellant had said he was going to kill Sailesh. Instead, it was Sailesh who said "he was gonna kick [appellant's] ass." Hernandez left the warehouse with appellant before police arrived because she was "shocked and upset."

Appellant testified that he was cutting up rags with a knife when Sailesh called on the telephone and the two argued. Later, Sailesh arrived at the warehouse and confronted appellant. Appellant testified that Sailesh was drunk and tried to choke him "[f]or maybe like 30 seconds or so." After he let go, Sailesh kicked appellant, grabbed appellant's wrist, and held it with the knife to appellant's neck, saying "I'm gonna kill you." During the encounter, appellant cut Sailesh's face. Appellant dropped the knife and left the warehouse. Appellant testified that he was "trying to save" himself. He denied telling Sailesh he was going to kill him and he did not intend to slash or hurt Sailesh.

On cross-examination, appellant was equivocal, first describing the slashing

as more "like self-defense" than an accident, because Sailesh "attacked me first." He then testified it was "more like an accident" and not self-defense. Eventually, appellant stated "[i]t could be self-defense or accident.." When asked if he understood the difference between the two, appellant testified, "Well, I say self-defense, then."

### *Procedural History*

Petitioner was originally charged by complaint, on June 30, 2003, with one count of assault with a deadly weapon. [Clerk's Transcript ("CT"), Respondent's NOL, Lodgment No. 6, at 1.] Petitioner was subsequently charged by information, on July 28, 2003, with attempted murder, mayhem, assault with a deadly weapon, and threatening to commit a crime. [CT at 32-35.] It was further alleged that the attempted murder was premeditated and that Petitioner personally used a deadly and dangerous weapon and inflicted great bodily injury. [Id.]

On October 2, 2003, the jury found Petitioner guilty of the offenses of premeditated attempted murder, aggravated mayhem, assault with a deadly weapon, and threatening to commit a crime. The jury further found Petitioner personally used a deadly and dangerous weapon and that the crimes resulted in great bodily injury. [CT at 153-155.] Petitioner was sentenced to an aggregate term of life with the possibility of parole plus five years. [CT at 280-283.]

Petitioner filed a direct appeal, arguing the trial court abused its discretion when it required the jury to reconsider a not guilty verdict on attempted murder and that the trial court abused its discretion when it denied his motion for new trial based on newly discovered evidence. [NOL, Lodgment No. 1 (Opening Brief on Appeal).] The Court of Appeal denied Petitioner's appeal and affirmed the judgment in its entirety by unpublished opinion filed on October 27, 2005. [NOL, Lodgment No. 1.]

Petitioner thereafter filed a petition for review in the California Supreme Court raising the same claims as he raised before the California Court of Appeal. [NOL, Lodgment No. 2.] The California Supreme Court denied Petitioner's appeal without comment. [Supplemental Lodgment, Doc. 23.]

Following the California Supreme Court's denial of his petition for review, on December 7, 2006, Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal, arguing there was insufficient evidence to support his conviction. [NOL, Lodgment No. 3.] On

1  December 22, 2006, the Court of Appeal denied the petition without comment.  [Id.]

2  On March 14, 2007, Petitioner filed a petition for writ of habeas corpus with the California
3  Supreme Court, again arguing insufficiency of the evidence to support his conviction.  [NOL,
4  Lodgment No. 4.]  On July 25, 2007, the California Supreme Court denied his petition with
5  citation to In re Dexter, 25 Cal. 3d 921 (1979) and In re Lindley, 29 Cal. 2d 709 (1947).

6  Petitioner filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on
7  September 24, 2007.  Petitioner raises three grounds for relief: (1) the trial court abused its
8  discretion when it required the jury to reconsider a not guilty verdict on attempted murder, in
9  violation of his right to due process, (2) the trial court abused its discretion when it denied his
10  motion for new trial, in violation of his right to due process, and (3) there was insufficient
11  evidence to support his conviction, violating his right to due process.

### *Legal Standard*

13  Pursuant to 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus only where
14  the state court's adjudication of the matter was "contrary to, or involved an unreasonable
15  application of, clearly established Federal law, as determined by the Supreme Court of the United
16  States" or where the state court's determination was "based on an unreasonable determination of
17  the facts in light of the evidence presented . . . ."  28 U.S.C. § 2254(d)(1) and (2).

18  A state court's decision may be found to be "contrary to" clearly established Supreme
19  Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in
20  [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially
21  indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from
22  [the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyer v. Andrade,
23  538 U.S. 63, 75-76 (2003).  A state court decision involves an "unreasonable application" of
24  clearly established federal law, "if the state court identifies the correct governing legal rule from
25  this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,"
26  or, "if the state court either unreasonably extends a legal principle from our precedent to a new
27  context where it should not apply or unreasonably refuses to extend that principle to a new context
28  where it should apply."  Williams, 539 U.S. at 407; Andrade, 538 U.S. 63, 75-76.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412; Andrade, 538 U.S. 63, 75-76; see Smith v. Patrick, 508 F.3d 1256 (9th Cir. 2007) (discussing meaning of "clearly established federal law").

Where there is no reasoned state court decision regarding the issue raised in the petition, the court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

## *Discussion*

### *1.  Jury's "Reconsideration" of Not Guilty Verdict*

In his first claim for relief, Petitioner argues the trial court denied him of due process when it ordered the jury to reconsider a "not guilty" verdict on the attempted murder charge. Following the presentation of evidence, the jury retired to deliberate on October 2, 2003. [Reporter's Transcript ("RT"), Respondent's NOL, Lodgment No. 5, at 346.] The jury returned to court about an hour and a half later with its verdicts. The court reviewed the verdict forms, and asked both counsel to approach the bench where it held an unrecorded bench conference. [RT at 357.] The trial court then addressed the jury as follows:

> Ladies and gentlemen.  I have reviewed the verdict forms that you have submitted, and as I instructed you, I will remind you of this once again, that you cannot be found guilty of the greater charge and the lesser charge.
> So if it is your decision that the greater charge is in order, then so be it, which has been executed. If that's the case, then the lesser charges would – should not be executed.
> If your decision is that he's guilty of the lesser charges and not the greater charges, then it's only those that should be executed, okay? Obviously it's your decision. And what you've given me is both, the greater charge and the lesser charges.
> So I'm going to ask you at this time to once again retire to the jury deliberation room and execute the appropriate verdict forms that correspond to your decision.

[RT at 357.] The reporter did not record the time, but noted there was a "brief recess" after which

1  time the jury returned and handed the clerk the verdicts.  [Id. at 357-58.]  The trial court confirmed
2  with the jury foreperson that the forms on which the signature and date had been lined out, the
3  word "void" written, and initialed, were in fact voided by the jury.  [RT at 358.]

4         The jury returned, and the Court recorded, findings of guilt on the charges of attempted
5  premeditated murder, aggravated mayhem, assault with a deadly weapon, and threatening to
6  commit a crime, with the additional findings that the defendant personally used a deadly and
7  dangerous weapon and inflicted great bodily injury.  [CT at 153-159.]  After reading the verdict on
8  each count, the clerk confirmed that this was the jury's verdict.  [RT at 358-361.]  Both parties
9  waived further polling of the jury.  [RT at 361.]

10         In addition to the signed and recorded verdict forms for each of the counts, the Clerk's
11  Transcript contains a "not guilty" verdict form for attempted murder, which was signed and dated
12  but then voided by the jury foreperson.  [CT at 143.]  Petitioner argues that the executed, but
13  voided, verdict form is evidence that the jury initially found him not guilty of the crime of
14  attempted murder.  Petitioner argues the trial court improperly required the jury to reconsider its
15  not guilty verdict, violating his right to due process.

16         Under California law, "it is the duty of the court to see that verdicts are returned in proper
17  form, and so far as form be concerned to aid the jury in returning correct verdicts."  People v.
18  Crawford, 115 Cal. App. 2d 838, 841 (1953); see also Bigelow v. Superior Court, 208 Cal. App.
19  3d 1127, 1136 (1989) (where jury returned inconsistent verdicts, acquitting defendant of the
20  charge of murder but finding special circumstances to exist, court had duty to clarify the verdict to
21  show its true intent).  As the California Court of Appeal noted in response to Petitioner's claim on
22  direct appeal, the trial court here explicitly told the jurors of the inconsistency in their verdicts, and
23  instructed them to correct the clerical error in its verdicts.  After the jury returned the second set of
24  verdicts, and the clerk read such verdicts in open court, all jurors agreed that the guilty verdict on
25  the attempted murder count accurately reflected their decision.  There is no basis upon which to
26  believe the jury originally intended to acquit Petitioner of the attempted murder count, and
27  changed such verdict following the trial court's instructions.  Petitioner has failed to demonstrate
28  by clear and convincing evidence that the state court's factual determination that the jury did not

1  "reconsider" its verdict of acquittal, but merely corrected a clerical error, was in error.  28 U.S.C.
2  § 2254(e)(1).

3  Although Petitioner argues the irregularity violated his right to due process, the issue
4  presented by Petitioner is purely one of state law.  Petitioner cites no relevant federal authority
5  supporting his theory that the trial court's resubmission of the ambiguous verdicts to the jury under
6  these circumstances implicates his rights to due process.  Therefore, the state court's decision
7  rejecting this claim was neither contrary to, nor an unreasonable application of, clearly established
8  federal law.

9  *2.     Trial Court's Denial of Petitioner's Motion for New Trial*

10  On May 11, 2004, seven months after conclusion of the jury trial, Petitioner's counsel filed
11  a motion for new trial based on new evidence.  [CT at 234-243.]  Petitioner's motion was
12  supported by a declaration by Ronil Sharma, a witness who was present at the time of the
13  altercation leading to the criminal prosecution.  [CT at 242-43.]  According to Sharma's
14  declaration, he was working at the warehouse with Petitioner on Jun 10, 2003, when Sailesh[1] ran
15  into the warehouse and kicked Petitioner in the groin.  Sailesh then tried to take the knife out of
16  Petitioner's hand, resulting in a struggle.  In the course of the struggle, Sailesh got cut in the face
17  in what Sharma described as an accident.  [CT at 242.]  Sharma believed Sailesh was drunk, as he
18  was "talking drunk, and staggering as he walked."

19  After Sailesh left the warehouse, Sharma gave Petitioner and his girlfriend a ride to the
20  AM-PM Store.  Sharma then returned to the warehouse to work.  Police interviewed Sharma, but
21  he told them he did not see anything.  [CT at 242.]  Sharma later saw Petitioner at the Police
22  Safety Center in Modesto, after Petitioner had been convicted of attempted murder.  He then
23  signed a letter stating what he saw.  [CT at 242.]  Sharma then gave Petitioner's counsel a
24  declaration in support of a motion for new trial.

25  On June 1, 2004, the trial court heard and denied the motion for new trial.  The trial court
26  found the evidence was not "newly discovered."  Sharma's presence was known to both Petitioner
27  and to law enforcement at the time of the incident, and Sharma was in the county jail for at least
28

---

[1]Sharma did not know Sailesh prior to this encounter.

ten days prior to Petitioner's trial. [RT at 378.]  Even assuming the evidence could be considered "newly discovered," the trial court found "a different result in this case is not probable." [Id.]  The trial court pointed out that Petitioner testified at trial, and his credibility was fully attacked on cross-examination.  The court further noted that Sharma's declaration was inconsistent with his earlier statement to law enforcement, and was also inconsistent with Petitioner's testimony. [Id. at 379.]

The California Court of Appeal agreed, finding Sharma's presence of the scene of the incident was known to Petitioner prior to trial. [Opinion of California Court of Appeal, Lodgment No. 1, at p. 12.]  The Court of Appeal further found Petitioner did not exercise due diligence to discover Sharma's whereabouts prior to trial, and that the proposed testimony of Sharma would have been cumulative to other evidence presented at trial. [Id. at p.13.]

Upon review, the Court finds the state court's decision denying Petitioner's motion for new trial is neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner argues the trial court's decision denying his motion for new trial was in error, but does not explain how the U.S. Constitution entitles him to relief.  The Supreme Court has held that the existence of newly discovered evidence demonstrating a convicted person's actual innocence does not constitutionally entitle a convicted person to a new trial absent some independent underlying constitutional claim.  Herrera v. Collins, 506 U.S. 390, 404-05 (1993).  Petitioner does not argue there was any underlying constitutional violation resulting in his inability to present Sharma as a witness at trial.  He also does not present a claim of actual innocence.  See Clark v. Runnel, 2008 WL 4532438 (E.D.Cal. 2008).

Under California law, the trial court was required to grant Petitioner a new trial if

> (1) the evidence is newly discovered; (2) the evidence is not cumulative; (3) the evidence is "such as to render a different result probable on a retrial of the cause;" (4) "the party could not with reasonable diligence have discovered and produced it at the trial;" and (5) that the "facts be shown by the best evidence of which the case admits."

Earp v. Ornoski, 431 F.3d 1158, 1171 fn.10 (9th Cir. 2005) (quoting People v. Martinez, 36 Cal.3d 816, 821 (1984)).  Here, Petitioner knew Sharma was a witness to the incident – Sharma gave Petitioner and his girlfriend a ride to an AM-PM store afterwards.  There is nothing to suggest

1  Petitioner could not, with due diligence, have called Sharma as a witness at trial. Sharma's
2  declaration was mostly cumulative of the trial testimony of Petitioner and his girlfriend, such that
3  it was not probable there would have been a different result. Petitioner has not identified any
4  underlying constitutional violation which resulted in his inability to present the evidence at trial.
5  The state court's decision denying Petitioner's motion for a new trial based upon Sharma's
6  declaration was neither contrary to nor an unreasonable application of federal law.

7  *3.*     *Sufficiency of the Evidence*

8  Finally, Petitioner argues his conviction was not supported by sufficient evidence of all the
9  charged offenses. Petitioner did not assert, on direct review, that his conviction was supported by
10 insufficient evidence. Although Petitioner subsequently raised his insufficiency of the evidence
11 claim in his petition for writ of habeas corpus to the California Supreme Court, the Court refused
12 to address the merits of the claim. Instead, the California Supreme Court denied the petition with a
13 citation to In re Lindley, 29 Cal. 2d 709 (1947). As a result, Respondent argues Petitioner's
14 insufficiency of the evidence claim is procedurally barred.

15 Under In re Lindley, the California Supreme Court will not consider the merits of a
16 sufficiency of the evidence claim in a state habeas corpus petition when the claim could have been
17 raised on direct appeal. 29 Cal. 2d at 721-24. The Ninth Circuit has found that the In re Lindley
18 bar is an adequate and independent state rule, which bars federal court review. Carter v. Giurbino,
19 385 F.3d 1194, 1198 (9th Cir. 2004). Therefore, the Court finds Petitioner's insufficiency of the
20 evidence claim is procedurally barred from federal court consideration.

21 Even if the Court were to review the merits of Petitioner's claim, however, Petitioner has
22 not shown he is entitled to relief. Habeas relief is available upon a claim of insufficiency of the
23 evidence only where no rational trier of fact could have found the petitioner guilty beyond a
24 reasonable doubt after looking at the evidence in the light most favorable to the state court
25 judgment. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Here, Petitioner and his girlfriend both
26 testified at trial, painting Sailesh as the aggressor and portraying Petitioner's actions as either
27 accidental or in self defense. Sailesh and another witness, Kumesh Narayan, testified that
28 Petitioner was the aggressor, brandishing the knife and repeatedly telling Sailesh "I'm gonna kill

1  you." [RT 30-35, 69-74, 78-79.]  The evidence showed Petitioner twice slashed Sailesh's face
2  from his left eyebrow down the left side of his face, while Sailesh's back was turned to Petitioner,
3  evidence inconsistent with Petitioner's testimony that he cut Sailesh by accident or in self defense.
4  [RT 38-42.]

5  This evidence was sufficient to allow a rational trier of fact to conclude beyond a
6  reasonable doubt that Petitioner committed the crime of attempted premeditated murder. See
7  People v. Lee, 31 Cal. 4th 613, 623 (2003) (setting forth elements of crime of attempted murder);
8  People v. Mayfield, 14 Cal. 4th 668, 767 (1997) (setting forth the test for determining whether act
9  was premeditated).  Furthermore, the evidence was sufficient for a rational trier of fact to conclude
10 that Petitioner acted with a specific intent to cause a maiming injury in violation of Cal. Penal
11 Code § 205.  See People v. Park, 112 Cal. App. 4th 61, 64 (2003) (discussing elements of
12 aggravated mayhem).  The crime of assault with a deadly weapon requires only general intent,
13 which was certainly shown by the evidence at trial.  See People v. Williams, 26 Cal. 4th 779, 784-
14 85 (2001) (setting forth elements of offense of assault with a deadly weapon).  Finally, Petitioner's
15 repeated verbal threats were sufficient to allow the jury to conclude he violated Cal. Penal Code
16 § 422.  People v. Toledo, 26 Cal. 4th 221, 227-28 (2001) (setting forth elements of offense of
17 making criminal threats).

18 Even assuming Petitioner's claim of insufficiency of the evidence is not procedurally
19 barred, the state court's decision denying such claim was neither contrary to, nor an unreasonable
20 application of, clearly established federal law.

### *Conclusion*

22 For the reasons set forth herein, Petitioner's petition for a writ of habeas corpus is
23 DENIED.  The Court further finds the issues raised by Petitioner are not ones that reasonable
24 ///
25 ///
26 ///
27 ///
28 ///

jurists would find debatable. 28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Thus, the Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED**.

**DATED:  June 4, 2009**

*Irma E. Gonzalez*

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**